Monique HARRISON, Plaintiff,

v.

John E. POTTER, Postmaster General, and United States Postal Service, Defendants.

No. 03 CIV. 6435(VM).

United States District Court, S.D. New York.

July 2, 2004.

Susan Penny Bernstein, Cronin & Byczek, L.L.P., Lake Sucess, NY, for Plaintiff.

Andrew Damian O'Toole, U.S. Attorney's Office, New York City, for Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Monique Harrison ("Harrison") brings this action against her former employer, the United States Postal Service (the "USPS") and John E. Potter, the United States Postmaster General, (collectively, the "Defendants") alleging discrimination and retaliation on the basis of gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., the corresponding New York State Executive Law § 296; and in violation of the United States Constitution under 42 U.S.C. §§ 1981, 1983, and 1985. Although the United States Equal Employment Opportunity Commission ("EEOC") found merit to Harrison's sexual harassment claims and awarded her damages, she sought reconsideration of the decision of the EEOC's Office of Field Operations ("OFO") to confine her compensation to the seven-day period for which she was suspended from her employment. In her motion for reconsideration, Harrison sought compensation for the entire span of time that she was sexually harassed. The OFO ruled the request untimely and dismissed the motion for reconsideration. Harrison then filed the instant action asserting her Title VII and constitutional claims.

Defendants move to dismiss Harrison's complaint for lack of subject matter jurisdiction and for failure to state a cause of action for which relief can be granted under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) respectively, or in the alternative, for summary judgment under Rule 56(c). Defendants seek dismissal or summary judgment on the grounds that Harrison's action before this Court is untimely and that her constitutional tort claims should be dismissed because they are preempted by Title VII.

As discussed in greater detail below, the Court grants the Defendants' motion to dismiss Harrison's complaint under Rule 12(b)(1), or in the alternative, grants the Defendants' motion for summary judgment on the grounds that Harrison has failed to exhaust administrative remedies prior to seeking relief in federal court, and because there no basis to equitably toll the applicable deadlines. In addition, Harrison cannot rely upon 42 U.S.C. §§ 1981, 1983, and 1985 to pursue her claims of sexual harassment against the federal government. Harrison's complaint is dismissed.

## I. BACKGROUND [1]

### A. PROCEDURAL HISTORY

Harrison, who was employed at the USPS as a machine operator, claims to have been sexually harassed by her supervisor, Freddie Burroughs ("Burroughs"), from 1986 until she retired on disability in 1992. In May 1991, Harrison attended a counseling session with an EEOC counselor regarding the alleged sexual harassment.[2] After her session with the EEOC

---

1. The factual summary presented herein derives primarily from the following documents: Complaint, Harrison v. Potter, No. 03 CV 6435, dated Aug. 25, 2003; Memorandum of Law in Support of Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, dated Jan. 20, 2004 with accompanying Exhibits and Affidavits; Defendants' Local Rule 56.1 Statement, dated Jan. 20, 2004; Plaintiff's Local Rule 56.1 Statement, dated May 7, 2004; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, dated May 21, 2004; Declaration of Peggy Bernstein with accompanying Exhibits, dated May 7, 2004; Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, dated May 21, 2004 ("Reply"). Except where specifically referenced, no further citation to these sources will be made.

2. Harrison attended a second session with an EEOC counselor in September 1991.

counselor, the USPS suspended Harrison for seven days, citing poor work performance. Harrison claims that Burroughs suspended her not for her work performance, but rather, in retaliation for her EEOC activity. Harrison filed a formal EEOC complaint *pro se* in January 1992.

In response to Harrison's complaint, the USPS conducted an investigation of Harrison's claim through its internal agency (the "Agency"). The Agency issued its final decision in January 1993 and found no discrimination. Harrison appealed the Agency's decision to the OFO in June 1993, which affirmed the Agency's findings in September 1993. Harrison filed a timely request for reconsideration with the OFO in October 1993. The OFO granted Harrison's motion for reconsideration, vacated the Agency's decision, and remanded the claim to the Agency for further investigation.

After completing a supplemental investigation, the Agency informed Harrison that she could pursue her claim in a hearing before an administrative law judge of the EEOC or request the Agency to issue another final decision. In May 1995, Harrison's attorney requested a hearing before the EEOC. The EEOC conducted a hearing in November 1995 and rendered its decision in July 1996 finding that Burroughs had sexually harassed Harrison and that her suspension was in retaliation for her EEO activity. The EEOC recommended various monetary awards and re-

medial measures.[3] On September 10, 1996, Harrison's counsel submitted a supplemental brief to the EEOC requesting additional damages for back pay, front pay and compensatory damages.

In a second final decision of the Agency issued on September 30, 1996, the Agency disagreed with the EEOC's finding of discrimination and closed the case. Harrison received notice of this decision on October 7, 1996 and timely appealed to the OFO on October 22, 1996. In a decision issued on October 22, 1999, the OFO reversed the final Agency decision and ordered the USPS to compensate Harrison for the period she was suspended.[4] The OFO's decision notified Harrison that her options were to either seek reconsideration of the Agency's decision by making such a request within thirty days of receipt of the decision, or initiate a civil action in federal court within ninety days of receipt of the decision. The OFO's decision prominently cautioned that late filings would be dismissed as untimely. The decision further provided for a petition for attorney fees if timely filed within thirty days. The record reflects that Harrison's attorney received the decision on October 28, 1999 and forwarded it to Harrison two days later.[5] On November 22, 1999, Harrison's attorney submitted a timely petition for attorney fees.

In June 2001, Harrison, proceeding with new counsel, filed a request for reconsideration of the October 22, 1999 OFO deci-

3. The EEOC recommended the following relief: lost income and benefits with interest for the period of the seven-day suspension; attorney fees; remedial measures within the USPS including training for its managers on sexual harassment in the workplace and the liability for failing to remediate such discrimination; and postings indicating that the EEOC entered a finding of sexual harassment and retaliatory discrimination against the USPS.

4. The OFO ordered the USPS to compensate Harrison for the income and benefits lost plus interest due to the seven day suspension; expunge the suspension from Harrison's record; conduct training on sexual harassment for the offending supervisor, as well as for an additional supervisor and general manager; submit a compliance report; and post an EEOC notice to employees regarding Title VII.

5. Harrison faxed the OFO's decision to a third party on November 11, 1999.

sion, approximately nineteen months after the filing deadline. In her motion for reconsideration, Harrison sought additional damages beyond the those awarded for the seven-day period for which she was suspended.[6] The Agency subsequently filed a motion opposing Harrison's motion for reconsideration on the grounds that it was untimely.

On May 23, 2003, the OFO, agreeing with the Agency, denied Harrison's request because she had failed to meet the EEOC filing deadline. The OFO specifically rejected Harrison's claim that the deadline should be tolled on the grounds that she encountered difficulties in obtaining documents. Furthermore, the OFO's notice emphasized that the October 22, 1999 decision would remain the EEOC's final decision, and further informed Harrison that there was no further right of administrative appeal. The OFO's May 23, 2003 written decision included a provision informing Harrison of a right to file a civil action in federal district court within ninety days of receipt of the decision. Harrison filed the instant action on August 25, 2003.[7]

## B. *THE PARTIES' ARGUMENTS*

In support of their motion, Defendants point out that Harrison filed this action almost four years after receiving the OFO's decision despite the clear statutory and regulatory time limits described in the decision. Accordingly, Defendants argue

that Harrison, by not having timely requested reconsideration following the October 22, 1999 OFO decision, and seeking to do so 19 months after the deadline, did not properly exhaust all administrative remedies, and thus, should not have access to federal court to pursue her claim. Defendants contend that to permit Harrison to ignore the initial filing deadlines and file a civil action years later would circumvent the administrative scheme Congress provided.

With regard to equitable tolling, Defendants argue that Harrison's allegations of administrative difficulties are vague and unsupported. Specifically, Defendants assert that Harrison's continuous, and apparently vigorous, representation by counsel since January 1995 in this matter undermines her request that this Court equitably toll the applicable deadline. Furthermore, Defendants contend that Harrison and her counsel were cognizant of the filing deadlines because Harrison's counsel filed a timely petition for attorney fees in response to the October 22, 1999 OFO decision, as well as a timely appeal to the OFO in October 1996. Finally, Defendants assert that Harrison was personally aware of filing deadlines because she filed a timely request for reconsideration of the OFO's decision in 1993 while appearing *pro se.*

Defendants further argue that Harrison's constitutional tort claims should also

---

**6.** While Harrison claims that she has not received any compensation and that the USPS never instituted the required remedial measures, the record indicates that Harrison received a letter from an OFO compliance officer dated June 22, 2000, informing her that the USPS was in compliance with the OFO's orders. (*See* Declaration of Darrell K. Ahmed, dated Jan. 15, 2004 ("Ahmed Decl."), at Ex. Y.)

**7.** The record does not reflect when Harrison actually received the May 23, 2003 OFO deci-

sion. The Court presumes that Harrison received the decision three days later, and thus, her filing of this action was within 90 days from receipt of the decision. *See* Fed.R.Civ.P. 6(e). The question posed by the instant motion, however, is whether the relevant 90–day period commenced as of the May 23, 2003 OFO's denial of reconsideration, as Harrison argues, or whether the period commenced as of late October 1999 when Harrison received the October 22, 1999 OFO decision.

be dismissed for lack of subject matter jurisdiction. Specifically, Defendants contend that constitutional tort claims, like the ones Harrison asserts here, do not apply to the federal government, and that in any event, should be dismissed because Title VII preempts any further relief for federal employment discrimination.

In response, Harrison argues that her complaint was timely in response to the May 23, 2003 OFO decision.[8] Harrison claims that the OFO did not dismiss her request on procedural grounds and that the decision expressly informed her that she had the right to file a civil action in federal district court within ninety days. In further support of her motion, Harrison asserts that the EEOC, in its July 1996 decision, had found her claims of sexual harassment and discriminatory retaliation to be meritorious. To buttress her request for equitable tolling, Harrison argues that she never received a complete claim file and the USPS failed to retain her file for the required period of time. According to Harrison, these circumstances restricted her ability to file a timely request for reconsideration of the October 1999 EEOC decision.

In the present action, Harrison seeks compensatory and punitive damages, and attorney fees. Pending before the Court is Defendants' motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In the alternative, Defendants seek summary judgment under Federal Rule of Civil Procedure 56(c).

## II. DISCUSSION

### A. STANDARDS UNDER RULES 12(B)(1) AND 12(B)(6)

A court should consider a motion under Federal Rule of Civil Procedure 12(b)(1) prior to the merits of a claim because the substantive merits thereafter "become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990). In reviewing a dismissal under Rule 12(b)(1), a court may consider materials beyond the pleadings, including affidavits, exhibits, and discovery materials, to determine if subject matter jurisdiction exists. *See Dillard v. Runyon*, 928 F.Supp. 1316, 1322 (S.D.N.Y.1996) (assessing materials outside of the pleadings to determine if grounds exist for equitably tolling a filing deadline). While recognizing that filing deadlines may be subject to equitable tolling, courts have held that absent such grounds, the failure to adhere to filing deadlines justifies a court's dismissal for lack of subject matter jurisdiction. *See, e.g., Brown v. General Services Admin.*, 425 U.S. 820, 824, 831–35, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (describing Title VII's "rigorous administrative exhaustion requirements and time limitations" as prerequisites to gaining access to federal courts and affirming dismissal for lack of subject matter jurisdiction when the plaintiff filed after the applicable deadline); *Briones v. Runyon*, 101 F.3d 287, 289–90 (2d Cir.1996) (discussing that Title VII requires litigants to "exhaust available administrative remedies in a timely fashion"); *Maldonado v. Colon*, No. 97 Civ. 3966, 1998 WL 240479, at *5–6 (S.D.N.Y. May 12, 1998) (dismissing a complaint for failure to exhaust the requisite administra-

---

**8.** The Court notes that while asserting that May 23, 2003 is the proper date to commence the filing period and that her complaint was thus timely on this premise, Harrison nonetheless requests equitable tolling. Thus, by seeking such relief, Harrison impliedly concedes that her filing of the present action was untimely.

tive remedies prior to seeking relief in federal court).

A court may dismiss a complaint pursuant to Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citation omitted). For purposes of a motion to dismiss, a court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Levy v. Southbrook Int'l Invs. Ltd.*, 263 F.3d 10, 14 (2d Cir.2001). In so doing, a court must not assess the strength of the plaintiff's allegations, but instead "assess the legal feasibility of the complaint." *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir.2000) (citations omitted). Furthermore, "a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999) (citation omitted).

## B. *STANDARD FOR SUMMARY JUDGMENT*

The Court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court ascertains which facts are material by considering the substantive law of the action, for only those "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even if a dispute of the material facts exists, summary judgment will be granted unless the

dispute is "genuine," *i.e.*, "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505.

The initial burden rests with the moving party to demonstrate the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the nonmoving party must provide "specific facts showing that there is a genuine issue for trial" in order to survive the motion for summary judgment. Fed.R.Civ.P. 56(e); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 98–99 (2d Cir.2003). The Second Circuit has granted summary judgment where a party failed to show any dispute over the facts that would entitle her to equitable tolling of the time requirements for her Title VII claim. *See Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir.2000).

In considering a motion for summary judgment, the Court must view the evidence in a light that is favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir.2004). However, the Court must refrain from weighing the evidence and restrict its inquiry to whether there are triable issues of material fact. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

## C. *TITLE VII'S FILING REQUIRE-MENTS*

Title VII, which aims to remedy discrimination in the workplace on the basis of race, color, religion, sex or national origin, provides that "[w]ithin 90 days of receipt of notice of final action taken by [an] agency ... an employee ... aggrieved by the

final disposition of his complaint ... may file a civil action ...." 42 U.S.C. § 2000e–16(c). Parallel provisions of EEOC regulations state that a complainant may file a civil action in the appropriate United States district court "[w]ithin 90 days of receipt of the final action on an individual" complaint. 29 C.F.R. § 1614.407(a). In addition, the OFO's decision remains final unless the OFO reconsiders the case. *See id.* § 1614.405(b). Reconsideration lies within the discretion of the Commission and is granted only if the party files "within 30 days of receipt of a decision of the Commission." [9] *Id.*

In order for a Title VII complainant to bring an action in federal court, she "must exhaust available administrative remedies in a timely fashion." *Briones,* 101 F.3d at 289; *see also Brown,* 425 U.S. at 832, 96 S.Ct. 1961; *Long v. Frank,* 22 F.3d 54, 59 (2d Cir.1994) (dismissing an ADEA complaint for failure to adhere to filing deadlines applicable to Title VII actions). Exhausting administrative remedies entails compliance with applicable EEOC filing regulations. *See Jenkins v. Potter,* 271 F.Supp.2d 557, 562 (S.D.N.Y. 2003) (finding a failure to exhaust administrative remedies where an appeal was filed 14 days past the applicable deadline).

D. *APPLICATION OF THE STANDARDS*

There is no dispute that Harrison and her attorney received a copy of the OFO's final decision, which informed her of both the 30–day filing deadline for making a request for reconsideration, and the 90–day deadline for filing a civil action in federal court. In addition to providing notice of the filing deadlines, the OFO decision warned that a "failure to file with-

in the time period will result in dismissal of [a] request for reconsideration as untimely" and failure to file timely in federal court may result in dismissal of the claim. (Ahmed Decl. at Ex. W.)

The OFO denied Harrison's request for reconsideration because Harrison failed to meet the applicable filing deadline under EEOC regulations. It is clear from the record, therefore, that by filing her request for reconsideration approximately 19 months late and filing a federal court action approximately three years later, Harrison did not adhere to the filing deadlines mandated by Title VII requirements, the EEOC regulations, and the OFO's decision. Thus, the only way that Harrison's Title VII action can survive is if this Court determines that there is a basis to apply the equitable tolling doctrine.

Although Harrison did not satisfy the filing requirements in pursuing her Title VII claim, the Court retains discretion to consider whether sufficient grounds exist to equitably toll the filing deadlines. *See Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (citation omitted). Since time limits represent a "condition to the waiver of sovereign immunity," the United States Supreme Court has held that such requirements must be "strictly construed," but not "unduly restrictively." *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 94, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). The Supreme Court has also emphasized that time limits should not be tolled for a failure to perform due diligence and that such equitable measures should be used only "sparingly." *Id.* at 96, 111 S.Ct. 453; *Baldwin,* 466 U.S. at 153, 104 S.Ct. 1723 (stating that congressional pro-

---

**9.** The Commission may grant a request for reconsideration if the party shows that "(1) [t]he appellate decision involved a clearly erroneous interpretation of material fact or law; or (2)[t]he decision will have a substantial impact on the policies, practices, or operations of the agency." 29 C.F.R. § 1614.405(b).

cedural requirements should not be ignored for lack of due diligence or "vague sympathy" for litigants).

■ In deciding whether to toll a time period for filing, courts seek to balance the necessity of adhering to statutory procedural requirements with equitable considerations of dismissing claims on technicalities. This Court is guided by some general factors to be considered in these circumstances, namely, whether the plaintiff believes she has complied with the requirements, whether there is evidence of any affirmative misconduct on the part of the defendant, and whether the plaintiff received sufficient notice. *See Briones,* 101 F.3d at 290 (citation omitted). Indeed, equitable tolling is usually reserved for those instances involving "affirmative misconduct" of the opposing party. *Long,* 22 F.3d at 59 (stating that "ambiguity of the EEOC notice does not ... amount to affirmative misconduct" by the government); *Dillard,* 928 F.Supp. at 1326 (stating that equitable tolling is not available for lack of due diligence).

■ Absent grounds for equitable tolling, courts may deny parties access to federal court.[10] *See Irwin,* 498 U.S. at 93–94, 111 S.Ct. 453; *Dillard,* 928 F.Supp. at 1325 (stating that when "a claimant has not met the filing requirements [of the EEOC], either directly or with the aid of equitable tolling, there is no waiver of sovereign immunity, and accordingly, no subject matter jurisdiction"); *Boos,* 201 F.3d at 185 (affirming the grant of summary judgment because the plaintiff did not substantiate her claims to warrant equitable tolling).

■ Applying these considerations, the Court is persuaded that Harrison was cognizant of the filing deadlines and of the lateness of her filings, as evidenced by her timely appeal to the OFO in 1996 and her timely petition for attorney fees in response to the October 22, 1999 OFO decision. The Court notes that the procedures for seeking attorney fees and review of the substantive claim are similar insofar as such motions must be filed within a specified time period, as dictated by EEOC regulations. Harrison provides no evidence or persuasive explanation why her counsel met the deadline for requesting attorney fees, but was unreasonably late with filings for reconsideration with the OFO and with the present action. Moreover, unlike the attorney fees procedures, the OFO decision *expressly* admonished that late filings risked dismissal. Thus, the Court cannot countenance that Harrison could have properly followed procedures for attorney fees, but yet was unaware of the consequences of ignoring a similar provision, particularly in light of an express warning stating that late filings were subject to dismissal. It is also evident to the Court that Harrison was personally cognizant of the filing deadlines because she filed a timely request for reconsideration of the OFO's decision in 1993 while appearing *pro se. See Jenkins,* 271 F.Supp.2d at 564 (finding constructive no-

10. Although it is well-settled that the failure to adhere to filing deadlines is non-jurisdictional, and therefore subject to tolling, courts have employed different procedural vehicles to dispose of claims where grounds for equitable tolling do not exist. *See, e.g., Zerilli-Edelglass v. New York City Transit Auth.,* 333 F.3d 74, 81 (2d Cir.2003) (upholding a Rule 12(b)(6) dismissal where plaintiff's lack of diligence in meeting filing deadlines did not warrant equitable tolling); *Boos,* 201 F.3d at 181–183 (affirming the district court's grant of summary judgment where plaintiff was not eligible for equitable tolling of the EEOC filing deadlines). The Court will consider the Defendants' motion as one for dismissal under Rule 12(b)(1), and in the alternative, as a motion for summary judgment under Rule 56(c).

tice of filing deadlines where a litigant had filed a timely appeal in a prior proceeding).

Although the Court must draw all reasonable inferences in favor of Harrison, she provides no evidence that she believed she had satisfied the EEOC procedural requirements. The compelling evidence presented in the record indicates to the contrary. *See Levy*, 263 F.3d at 14 (stating that "dismissal is appropriate if the plaintiff can prove no set of facts that would entitle him to relief"). Moreover, Harrison cannot in good faith claim ignorance of EEOC procedural requirements when she has had counsel representing her in this matter since January 1995.

The Court is also not persuaded by Harrison's claims that the USPS thwarted her attempts to pursue her Title VII claim by failing to provide her with a copy of the complaint file, comply with the OFO orders, and to inform her of her rights. Harrison provides no evidence of her attempts to obtain the allegedly missing portion of her file or how the lack of such documents hindered her ability to timely file in accordance with Title VII statutory and EEOC regulatory procedures. Contrary to Harrison's allegations, the record reflects that the Agency gave Harrison a copy of her complaint file, that the OFO informed her that the USPS was in compliance with the EEOC's October 22, 1999 orders, and that she was informed of her rights under Title VII throughout the proceedings. (*See* Ahmed Decl. at Ex. Q (informing Harrison that the Agency completed its investigation and enclosing a copy of the complaint file); Ex. Y (notifying Harrison that the Agency was in compliance with the OFO's orders); Ex. W (OFO decision finding that Harrison was paid compensatory damages for back pay, but not interest); Exs. H & I informing Harrison of her right to file a formal EEOC complaint and instructions for completing the form); Exs. K, L, M, O, Q, S, U, W, AB (various Agency and EEOC decisions providing procedures for appeals). Although as a general matter defendants must refrain from affirmative misconduct that obstructs a plaintiff's ability to exercise her rights, ambiguity in the EEOC's notice does not amount to such a denial to provide a basis for equitable tolling. *See Long*, 22 F.3d at 58–59.

Thus, the Court is persuaded that Harrison's failure to meet the filing deadlines stems from a lack of due diligence on her part, rather than from any affirmative misconduct or nonfeasance on the part of Defendants. *See Long*, 22 F.3d at 58–59 (refusing to apply equitable tolling where the plaintiff's delay in filing was not a result of any "affirmative misconduct on the government's part aimed at causing [the plaintiff] to forgo his legal rights"). The Court, mindful that equitable tolling should be invoked only sparingly and where extraordinary circumstances frustrated a party's reasonable diligence in pursuing a claim, declines to grant Harrison the benefit of equitable tolling. *See Irwin*, 498 U.S. at 96–97, 111 S.Ct. 453; *see also Zerilli–Edelglass v. New York City Transit*, 333 F.3d 74, 80–81 (2d Cir. 2003) (stating that equitable tolling is appropriate where a plaintiff "has acted with reasonable diligence during the time period she seeks to have tolled" and "the circumstances are so extraordinary" as to warrant its application) (internal quotations and citation omitted); *Jenkins*, 271 F.Supp.2d at 564.

Because Harrison "has not met the filing requirements [of the EEOC], either directly or with the aid of equitable tolling," the Court dismisses this claim for want of subject matter jurisdiction. *Dillard*, 928 F.Supp. at 1325; *see also Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir.1984) (stating that absent equitable tolling, the court may not extend a

deadline "by even one day") (citation omitted). Alternatively, the Court grants the Defendants' motion for summary judgment because Harrison has failed to demonstrate that there is any triable issues of material fact to warrant equitable tolling of the filing deadlines. *See Boos,* 201 F.3d at 185; *Long,* 22 F.3d at 58–59.

■ Harrison argues that the OFO waived the initial EEOC filing deadlines by expressly providing a written notice of a right to file a civil action in its May 23, 2003 denial of her request for reconsideration. While it is certainly preferable that the OFO omit such boilerplate language in case where it does not apply, the Court rejects Harrison's contention that the inclusion of this language amounts to an affirmative waiver of the filing deadline. Such an interpretation would unjustly reward litigants for their delays in filing by allowing them to reopen claims at any time, thereby denying finality to the EEOC proceedings and circumventing procedures prescribed by Congress. *See Brown,* 425 U.S. at 832–33, 96 S.Ct. 1961 (rejecting an argument that would allow Title VII's "remedial scheme to be circumvented by artful pleading"); *Lo v. Pan Am. World Airways, Inc.,* 787 F.2d 827, 828 (2d Cir.1986) (affirming summary judgment against the plaintiff when she obtained a second "right-to-sue" letter after her time to file under a first letter expired); *Jenkins,* 271 F.Supp.2d at 563 (citation omitted).

In *Jenkins,* the plaintiff similarly argued that the provision notifying her of her right to file in federal court revived her stale claim even though the OFO dismissed her request for reconsideration as untimely. *See Jenkins,* 271 F.Supp.2d at 563. The court in *Jenkins* rejected this argument after finding that the EEOC's requirement under applicable guidelines to inform complainants of their right to file a civil action cannot "serve to abrogate initial filing deadlines." *Id.* The same result is warranted here. Even if the OFO had accepted the request as timely, "the agency does not waive its right to argue lack of timeliness in district court even after an EEOC ruling that the complaint was timely filed." *Briones,* 101 F.3d at 290.

Consistent with the Court's ruling here, other courts have held that only timely requests for reconsideration toll the filing deadline for initiating an action in federal court. *See, e.g., Holley v. Department of Veteran Affairs,* 165 F.3d 244, 246 (3d Cir.1999); *Belhomme v. Widnall,* 127 F.3d 1214, 1216–17 (10th Cir.1997); *Rowe v. Sullivan,* 967 F.2d 186, 190 (5th Cir.1992); *Donaldson v. Tennessee Valley Auth.,* 759 F.2d 535, 537 (6th Cir.1985); *Nordell v. Heckler,* 749 F.2d 47, 49 (D.C.Cir.1984); *Gonzalez v. Fedex Co.,* No. 95 Civ. 3529, 1996 WL 346968, at *3 (S.D.N.Y. June 24, 1996). Moreover, under EEOC regulations, the OFO's decision remains final unless the Commission, in its discretion, reconsiders the case. *See* 29 C.F.R. § 1614.405(b). In denying Harrison's request for reconsideration, the OFO twice notified her that the Commission's appellate decision remained final and that she would continue to be bound by the initial filing deadlines. (*See* Ahmed Decl. at Ex. AB.)

■ Furthermore, any alleged confusion over the notice provisions generally does not provide a ground for equitably tolling the filing deadlines. *See Long,* 22 F.3d at 58 (holding that equitable tolling is not applicable even if the EEOC's notice was not "a model of clarity") (internal quotations and citation omitted). Assuming that the notice in the May 23, 2003 OFO decision of a right to file a civil action was somewhat misleading, that circumstance fails to explain why Harrison filed the request for reconsideration with the OFO approximately 19 months late. In addi-

tion, as already stated above, Harrison's claim is less persuasive because she was represented by counsel throughout the proceedings and filed previous appeals and requests in a timely fashion. *See id.* at 59 (affirming the district's court denial of equitable tolling, in part, because the plaintiff was represented by counsel at the relevant time).

Accordingly, the Court rejects Harrison's request for equitable tolling and grants Defendants' motion to dismiss her Title VII claim for lack of subject matter jurisdiction, and in the alternative, grants Defendants' motion for summary judgment.

### E. *HARRISON'S CONSTITUTIONAL CLAIMS*

■■■ Defendants also move to dismiss Harrison's §§ 1981, 1983, and 1985 claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). It is well-settled that the federal government and federal agencies are immune from suit absent a waiver of sovereign immunity. *See, e.g., FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction") (citation omitted); *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (explaining that in civil suits against the federal government, "the available remedies are not those that are appropriate, but only those for which sovereign immunity has been expressly waived") (citing *Franklin v. Gwinnett County Pub. Schools*, 503 U.S. 60, 70–71, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992)). Because the

United States has not waived its sovereign immunity for constitutional tort claims under the Civil Rights Act, this Court dismisses Harrison's §§ 1981, 1983, and 1985 claims for lack of subject matter jurisdiction. *Meyer*, 510 U.S. at 478, 114 S.Ct. 996.

■■■ In addition, Harrison's constitutional tort claims are barred because these statutory provisions do not provide a remedy against the federal government. *See West v. Atkins*, 487 U.S. 42, 49–50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (discussing that a defendant in a § 1983 action must "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law") (internal quotations omitted); *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 830–834, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (explaining that § 1985 protects an individual's constitutional rights from infringement by conspiracies of private or "state" actors); *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1358 (2d Cir.1989) (explaining that claims of governmental interference with constitutional rights must show some "state involvement"); *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir.1996) (stating that claims under § 1983 must allege a violation "committed by a person acting under the color of state law"). Also, a plain reading of §§ 1981 and 1983 indicates that these statutes do not apply to the federal government.[11] *See* 42 U.S.C. § 1981(c) (stating that rights protected "against impairment by nongovernmental discrimination and impairment under color of State law"); § 1983 (providing relief for depriva-

---

11. The Court notes Harrison's convenient omission in her complaint of the critical word, "State" from these statutes in an attempt to cloud the requirement that the constitutional tort claims operate not against the federal government, but rather, against those

individuals operating "under color of *State* law" or "under color of any statute, ordinance, ... of any *State or Territory or the District of Columbia*, ...." 42 U.S.C. §§ 1981(c) & 1983 (emphasis added).

tion of rights by any individual acting "under color of any statute . . . of any State or Territory or District of Columbia"); *Phillip v. University of Rochester*, 316 F.3d 291, 294 (2d Cir.2003) (stating that the clear statutory language extends § 1981 claims to suit against both private and state actors).

■ Furthermore, Harrison's constitutional claims are improper because Title VII provides the exclusive remedy for federal employment discrimination. *See Brown*, 425 U.S. at 828–29, 835, 96 S.Ct. 1961; [12] *Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir.1998); *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 587 (2d Cir.1988) (stating that Title VII claims may not be plead instead as § 1985 actions) (citing *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979)). The Supreme Court in *Brown* distinguished prior case law and reinterpreted Title VII in light of its 1972 amendments to "create an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown*, 425 U.S. at 829, 96 S.Ct. 1961. In addition, the cases Harrison relies upon in support of her joint claims under Title VII and §§ 1981, 1983, and 1985 are inapposite because those cases dealt with discrimination in private employment, rather than federal employment discrimination. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Goss v. Revlon, Inc.*, 548 F.2d 405 (2d Cir.1976).

In addition, the Court rejects Harrison's argument that her constitutional claims

are proper because they are beyond the scope of Title VII. It is evident that the same conduct and events underlie both claims and the Court cannot discern how Harrison's constitutional claims are distinct from her Title VII claims. *See Traggis*, 851 F.2d at 587 (requiring the plaintiff to plead her claim under Title VII rather than under § 1985, while admitting that the same conduct can underlie the same causes of action). Moreover, the authority Harrison cites in support of her contention that a claim of sexual harassment under the Equal Protection Clause contains distinct elements from such a claim under Title VII is inapplicable to this case because those cases did not involve federal employment discrimination.

## F. HARRISON'S STATE LAW CLAIM

■ With the dismissal of all of Harrison's federal claims, her remaining claim arises only under state law. In these instances, the Court has discretion to decline to exercise pendent jurisdiction over related state law causes of action. *See* 28 U.S.C. § 1367(c). Indeed, absent unique circumstances, a federal court should decline to exercise supplemental jurisdiction over a state law claim when no federal claim survives. As the Second Circuit has explained, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir.2003) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct.

12. Harrison's reliance on *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), for the proposition that Title VII may be used coextensively with other applicable statutes to remedy federal employ-

ment discrimination, is misplaced in light of the subsequent *Brown* decision and its progeny, which have interpreted Title VII to be the exclusive remedy for federal employment discrimination.

614, 98 L.Ed.2d 720 (1988)); *see also Baylis v. Marriott Corp.*, 843 F.2d 658, 664 (2d Cir.1988) ("The basis for retaining jurisdiction is weak when, as is the case here, the federal claims are dismissed before trial."). Accordingly, having dismissed all of Harrison's federal claims, the Court declines to exercise its discretion under § 1367(c) over her remaining state law claim under New York Executive Law § 296.

## III. *ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that the motion of defendants John E. Potter and the United States Postal Service (the "Defendants") to dismiss the complaint of plaintiff Monique Harrison ("Harrison") under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction is GRANTED. In the alternative, Defendants's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) is GRANTED. All of Harrison's claims are dismissed with prejudice except for her claim under New York Executive Law § 296, which is dismissed without prejudice.

The Clerk of Court is directed to close this case.

**SO ORDERED.**