Jeanina CELESTINE, Plaintiff,

v.

COLD CREST CARE CENTER, Defendant.

No. 04 Civ. 4117(VM).

United States District Court, S.D. New York.

July 16, 2007.

Jeanina Celestine, Mt. Vernon, NY, Pro se.

Daniel Friedman, Daniel Friedman Esq., New York City, for Defendant.

### *DECISION AND ORDER*

MARRERO, District Judge.

### I. *INTRODUCTION*

Pro se plaintiff Jeanina Celestine ("Celestine") brought this action against her former employer, Gold Crest Care Center ("Gold Crest"),[1] alleging discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"). Before the Court is Gold Crest's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), claiming that Celestine's complaint was not timely filed. The Court has received and reviewed the Report and Recommendation (the "Report") of Magistrate Judge Ronald L. Ellis, dated September 5, 2006, advising denial of the motion. For reasons somewhat different from those articulated in the Report, Gold Crest's motion is DENIED.

### II. *BACKGROUND*[2]

■ Celestine initially filed a charge with the Equal Employment Opportunity

---

1. Celestine's complaint lists the defendant as "Gold Crest Care Center," but the docket erroneously lists "Cold Crest Care Center."

2. The factual background, about which there is no material dispute, is derived from the Report and Recommendation of Magistrate Judge Ellis, dated Sep. 5, 2006 ("Report");

Defendant's Memorandum of Law in Support of Motion for Judgment of Pleadings, dated Aug. 8, 2006 ("Def.Mem."); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings, dated Aug. 24, 2006 ("Pl.Mem."); and Defendant's Written Objections to Report and Recommen-

Commission ("EEOC") as required by the ADA. *See* 42 U.S.C. §§ 12117(a), 2000e–5(e)(1). She subsequently received a "right-to-sue" letter (the "Letter") on January 24, 2004.[3] On April 20, 2004, Celestine submitted a complaint against Cold Crest and an application to proceed in forma pauperis ("IFP") to the Pro Se Office in this District. Then–Chief Judge Mukasey denied the IFP application on June 1, 2004, finding it to be "incomplete and somewhat confusing." (*See* Report at 2.) Judge Mukasey entered an order directing Celestine to either pay the filing fee or submit an amended request to proceed IFP within sixty days. Celestine filed an amended IFP application on August 11, 2004. On October 12, 2004, Judge Mukasey denied the amended application and directed Celestine to pay the filing fee within thirty days of that date. Finding no filing fee entered on the docket as having been paid, Judge Mukasey dismissed Celestine's complaint on December 29, 2004.

However, Celestine subsequently submitted to the court what Judge Mukasey construed as a motion seeking relief from the judgment under Federal Rule of Civil Procedure 60(b). Celestine claimed that she was being treated for a medical condition, was under a lot of stress, and had attempted to remit her filing fee on December 15, 2004, which a receipt in the file apparently confirmed. Judge Mukasey granted the motion, vacated the judgment dismissing Celestine's complaint, and directed her to pay the filing fee within 30 days. On August 16, 2005, the fee was entered on the docket as having been paid on December 15, 2004.

Shortly thereafter, the case was assigned to Judge Richard C. Casey, who subsequently referred it to Magistrate Judge Ellis for supervision of pretrial proceedings. On August 9, 2006, Gold Crest moved for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), asserting that Celestine's claim was time-barred. Specifically, Gold Crest claimed that if the statute of limitations had been equitably tolled during the pendency of Celestine's IFP application, that period of tolling had expired before Celestine filed her amended IFP complaint on August 11, 2004. Magistrate Judge Ellis issued his Report on September 5, 2006. In it, Magistrate Judge Ellis found it unnecessary to engage in an equitable tolling analysis. Instead, he recommended that the "Pro Se Office received date be used as the filing date for pro se complaints submitted with IFP applications." (Report at 7.)

Magistrate Judge Ellis based his recommendation largely on language from *Toliver v. Sullivan County*, 841 F.2d 41 (2d Cir.1988), where the Second Circuit found that the date a pro se plaintiff's complaint and request to proceed IFP "is the filing date for the purposes of meeting this ninety-day filing requirement, 'at least where in forma pauperis relief is granted.'" (Report at 3 (*quoting Toliver*, 841 F.2d at 42).) In Magistrate Judge Ellis's view, the issue was one not strictly of tolling, but rather one involving the court's general equitable

---

dation of Hon. Magistrate Judge Ronald L. Ellis, dated Sept. 11, 2006 ("Def.Obj."). Except where specifically referenced, no further citation to these sources will be made.

**3.** The Letter is dated January 21, 2004. There are rebuttable presumptions that "a notice provided by a government agency has been mailed on the date shown on the notice," and that "a mailed document is received three days after its mailing." *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525–526 (2d Cir.1996). As neither party has challenged these presumptions, the Letter is deemed to have been received by Celestine within the time indicated, and thus January 24 is the applicable date for commencement of the 90–day period.

powers, especially in the context of Celestine's status as a pro se litigant and the "remedial purpose of [the ADA] as a whole." (Report at 9 (*citing Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)).) According to Magistrate Judge Ellis, to incorporate the tolling doctrine would be to require a "technical reading" of the statutory limit, a process "particularly inappropriate" where pro se litigants are involved. (*Id.*)

The case was subsequently reassigned to this Court.

### III. STANDARD OF REVIEW

A district court evaluating a Magistrate Judge's report may adopt those portions of the report to which no "specific, written objection" is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous. *See* Fed.R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Greene v. WCI Holdings Corp.*, 956 F.Supp. 509, 513 (S.D.N.Y. 1997). "Where a party makes a 'specific written objection' within '[ten] days after being served with a copy of the [magistrate judge's] recommended disposition,' the district court is required to make a de novo determination regarding those parts of the report." *Cespedes v. Coughlin*, 956 F.Supp. 454, 463 (S.D.N.Y.1997) (*citing United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). Upon review, a district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. *See Raddatz*, 447 U.S. at 673–74, 100 S.Ct. 2406 (1980); *DeLuca v. Lord*, 858 F.Supp. 1330, 1345 (S.D.N.Y. 1994); *Walker v. Hood*, 679 F.Supp. 372, 374 (S.D.N.Y.1988).

Gold Crest does not object to the factual findings of the Magistrate Judge, which are hereby adopted in full. However, Gold Crest categorically objects to Magistrate Judge Ellis's recommendation that Celestine's complaint was timely filed and that the motion for judgment on the pleadings should be denied. This Court will thus review the arguments of both parties de novo.

### IV. DISCUSSION

The ADA, like Title VII of the Civil Rights Act of 1964, requires that a plaintiff seeking review of the dismissal of charges alleging employment discrimination to file a complaint in a United States district court within 90 days of receiving an EEOC right-to-sue letter. *See Sherlock*, 84 F.3d at 525 (*citing* 42 U.S.C. § 2000e–5(f)(1)). Parallel provisions of EEOC regulations state that a complainant may file a civil action in the appropriate district court "within 90 days of receipt of the final action on an individual ... complaint[.]" 29 C.F.R. § 1614.407(a). Celestine received the Letter on January 24, 2004, *see supra* n. 3, and thus the 90–day time period began to run on that date. *See Lin v. New York City Admin. for Children's Servs.*, 2001 WL 964016, at *3 (S.D.N.Y. Aug. 23, 2001).

Celestine submitted her complaint and IFP application to the Pro Se Office on April 20, 2004, three days before the 90–day period was to expire. The Federal Rules of Civil Procedure make clear that such a submission cannot be treated as the "filing" of an action. *See* Fed.R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court."), Fed.R.Civ.P. 5(e) ("The filing of papers with the court as required by these rules shall be made by filing them with the clerk of the court."); *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984); *Dzaba v. Blyth Eastman Paine Webber,*

No. 84 Civ. 3711, 1985 WL 199, at *2 (S.D.N.Y. Jan. 17, 1985) ("A complaint tendered IFP cannot technically be 'filed' until either leave to proceed IFP has been granted or the plaintiff has remitted the filing fee."). Thus, the notion that Celestine's submission to the Pro Se Office constitutes a "filing" must be rejected.[4] *See Nielsen v. Flower Hospital,* 639 F.Supp. 738, 740 n. 3 (S.D.N.Y.1986). Timely-filing requirements of the ADA, including the 90–day rule at issue here, have uniformly and consistently been treated not as jurisdictional predicates, but rather as time periods subject to waiver, estoppel, and equitable tolling. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393–398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Johnson v. Al–Tech Specialties Steel Corp.,* 731 F.2d 143, 146 (2d Cir.1984); *Ghosh v. New York City Dept. Of Health,* 413 F.Supp.2d 322, 329 (S.D.N.Y.2006). Although the time period is subject to extension, the statutory limits imposed by Congress are not to be taken lightly. "In the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." *Johnson,* 731 F.2d at 146. As the Supreme Court has stated, "procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin,* 466 U.S. at 152 n. 6, 104 S.Ct. 1723. The 90–day limit at issue here is not merely a suggestion; it is a statutorily-imposed requirement necessitating strict adherence, subject only to very narrow exceptions. Thus, an equitable tolling analysis is not inappropriately technical; rather, it

is necessary to safeguard the prerogative of Congress not to have its judgment disregarded without sufficient warrant.

*Toliver* is fully consistent with this approach, as that case dealt only with the timely filing of a complaint "where in forma pauperis relief is granted." 841 F.2d at 42. In that case, the Second Circuit explicitly left open the question of whether an action should be treated as timely when a complaint and IFP application are submitted to the Pro Se Office prior to the expiration of the limitations period, but the IFP status is subsequently denied. *Id.* In *Nielsen,* the district court noted that the practice in this District of extending the limitation period is not always "explicitly characterized . . . as equitable tolling," but it recognized that the equitable tolling approach was "reasonable and is fully consistent with the rationale underlying the District's practice." 639 F.Supp. at 740 n. 3 (*citing Dzaba,* 1985 WL 199, at *2–3).

■ In this case, although Celestine's complaint was not filed with the Clerk of Court within the 90–day deadline, the Court retains discretion to consider whether sufficient grounds exist to equitably toll the filing deadlines. *See Baldwin,* 466 U.S. at 152, 104 S.Ct. 1723; *Ghosh,* 413 F.Supp.2d at 329. In deciding whether to toll the filing time period, courts seek to balance the necessity of adhering to procedural requirements with equitable considerations of dismissing claims on technicalities. The Court is guided by several recognized equitable considerations to be weighed when making this determination, such as "whether the plaintiff believes [she] has complied with the

---

**4.** As noted below, the time limit may effectively stop running upon the submission of a complaint to the Pro Se Office where a request to proceed IFP is granted. Nonetheless, it is not analytically precise to state, as courts occasionally do, that a complaint is filed at the time of receipt by the Pro Se

Office. It is the existence of some recognized equitable consideration that leads to the effective termination of the limitations period. *See, e.g., Smith v. Henderson,* 137 F.Supp.2d 313, 317 n. 2 (S.D.N.Y.2001) (collecting cases).

requirements ... and whether the plaintiff received sufficient notice." *Harrison v. Potter*, 323 F.Supp.2d 593, 601 (S.D.N.Y.2004) (*citing Briones v. Runyon*, 101 F.3d 287, 290 (2d Cir.1996)); *see also Ghosh*, 413 F.Supp.2d at 329.

■ It is clear that equitable tolling of the limitations period during the pendency of the IFP application is warranted in this situation. As the *Nielsen* court emphasized:

> Because the delay is completely outside the litigant's control, and because a complaint cannot be formally filed without either an order granting IFP status or payment of the customary fee, the courts have concluded that it would be unfair to penalize Title VII plaintiffs who present their complaints to the Pro Se Office within the statutory period, but whose complaints are not formally filed until after the period had run due to delay in the processing of their IFP requests.

639 F.Supp. at 740 n. 3. The same reasoning applies in ADA cases. Therefore, during the period that Celestine's request to proceed IFP was under review, from April 20, 2004 until June 1, 2004, the limitations period was tolled.

In situations where IFP status is ultimately granted, there is no occasion for the filing period to begin running again, as the Pro Se Office routinely assumes the task of filing the complaint with the Clerk of Court. "For all practical purposes, then, the clock will have stopped running on the day the plaintiff originally presented the complaint to the Pro Se Office." *Id.* Thus, "at least where in forma pauperis relief is granted, the action should be treated as timely," because the limitations period has been tolled. *Toliver*, 841 F.2d 41 (2d Cir.1988).

■ In this case, IFP status was denied. Accordingly, Celestine's complaint with the Court was not filed following the completion of the IFP review process. The equitable justification for the tolling of the limitations period lasted only as long as the pendency of the request to proceed IFP. Once the application was denied, the process was no longer out of the control of Celestine. Absent a new reason justifying extension of the limitations period, Celestine would have had just three days remaining to file her claim, as 87 days had passed between her receipt of the right-to-sue letter on January 24, 2004 and her submissions to the Pro Se Office on April 20, 2004.

However, circumstances do in fact exist which justify the extension of equitable tolling beyond July 30. When Celestine's IFP application was denied, she did not have adequate notice that the limitations period would begin to run again. Indeed, Judge Mukasey's Order of June 1, 2004 did not speak to this issue at all, nor did any subsequent communication. By comparison, the EEOC right-to-sue letter explicitly states that a "lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this claim will be lost." (*See* EEOC Right To Sue Letter, dated Apr. 10, 2002, attached as Ex. D to Affirmation of Daniel Friedman, Esq., dated Aug. 8, 2006 (emphasis in original).)

Having filed a complaint and IFP request with the Pro Se Office, a pro se litigant might very reasonably conclude that the lawsuit was "filed" and the 90–day limit no longer posed any threat to the claim. This inference would further be confirmed by the absence of any notice to the contrary in the subsequent orders issued by a court. Without a clear and explicit warning, there was no reason for Celestine to believe that she would be completely foreclosed from further pursuing any relief on her claims if she failed to comply with the Order of June 1, 2004.

The Court is mindful of the well-established tradition of liberal treatment afforded pro se litigants. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Two fundamental notions lie at the heart of this tradition:

> One is that a lay person—even one with expertise in an academic or professional field other than law—cannot fairly be expected to master, for purposes of a single lawsuit, all of the technical requirements for commencing and pursing an action in federal court, or to appreciate every possible consequence of failure to comply with a particular rule or order. A second notion is that the pro se litigant ... is necessarily at a disadvantage opposite a party represented by competent, experienced litigators, and should not be deprived of his or her day in court by opposing counsel's deft manipulation of legal rules and doctrines.

*Nielsen,* 639 F.Supp. at 746 n. 10. The order denying IFP status was silent on the issue of the limitations period. A pro se litigant should not be penalized for failing to understand a complex doctrine, such as equitable tolling, that often causes confusion among even experienced litigators.[5] As noted above, Celestine had no reason to believe that the denial of IFP status ended the tolling period and restarted the clock on the limitations period. Thus, a recognized equitable consideration justifying further tolling of the limitations period clearly exists, namely, that Celestine received inadequate notice of the consequences of her failure to meet the deadlines imposed by the court. *See Baldwin,* 466 U.S. at 151, 104 S.Ct. 1723; *Briones,* 101 F.3d at 290; *see also Dzaba,* 1985 WL 199, at *3.

When equitable tolling is justified due to the inadequacy of notice afforded a litigant, that tolling period continues until the proper notice is given and the problem is remedied. Since Celestine never received adequate notice regarding the running of the 90–day limit, there was no occasion for the running of the limitations period to recommence. Thus, this Court finds the 90–day limit to have been tolled from June 1, 2004 until December 19, 2004, at which point Celestine's complaint was officially filed. The statute of limitations, therefore, did not expire prior to the payment of the filing fee. Hence, Celestine's complaint was timely filed.

Gold Crest submits that the tolling of the limitations period ended on July 30, 2004, and the statute of limitations expired shortly thereafter. (*See* Def. Mem. at 6.) In its view, there no longer existed any recognized equitable consideration justifying the extension of the limitations period once Celestine failed to meet the requirements of Judge Mukasey's June 1, 2004 Order.[6] *See Johnson,* 731 F.2d at 146.

It is true that Celestine was explicitly given an additional sixty days beyond the denial of her initial IFP request to submit an amended request or pay the filing fee, and that she did not respond to the Order until August 11, 2004, twelve days after the due date prescribed therein. Whether Celestine fulfilled those instructions, however, is a separate issue from the existence

---

**5.** As the memoranda of law in this case make apparent, the law surrounding the application of equitable tolling is unclear. Indeed, as noted above, the Second Circuit has explicitly left open the question of whether the doctrine would apply in a case where a request to proceed IFP was denied. *See Toliver,* 841 F.2d at 42.

**6.** Gold Crest concedes that the instructions of Judge Mukasey alone would have been justification to toll the limitations period for at least 60 days, until July 30, 2004. (*See* Def. Mem. at 6.)

of adequate notice regarding the restarting of the limitations period, and the fact remains that Celestine never received that notice.

Additionally, the Court notes that Gold Crest has not pointed to any evidence of substantial prejudice it may have suffered from any delay in the filing of the complaint with the Court. While it is undoubtedly the purpose of limitations periods to prevent stale claims from being litigated, it seems that the delays attributable to Celestine's conduct are slight, merely a few days in the more than five years between Celestine's termination from her employment with Gold Crest and today. When balanced against the extreme prejudice Celestine would suffer if her claim were found to be time-barred, resulting in a complete inability to even pursue relief on her claim, this Court is persuaded that the interests of justice are best served by the denial of Gold Crest's 12(c) motion.

## V.  *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that the motion of Defendant Gold Crest Care Center ("Gold Crest") (Docket No. 19) for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is DENIED.

**SO ORDERED.**