**Shyamal GHOSH, Plaintiff,**

v.

**NEW YORK CITY DEPARTMENT OF HEALTH, Defendant.**

**No. 03 CIV. 780(VM).**

United States District Court, S.D. New York.

Feb. 6, 2006.

See also, 2004 WL 3019769.

Shyamal C. Ghosh, Elmhurst, NY, pro se.

Alecia Walters, Danielle Marie Dandrige, Hoey, King, Toker & Epstein, New York, NY, for Defendant.

### DECISION AND ORDER

MARRERO, District Judge.

### I. INTRODUCTION

*Pro se* plaintiff Shyamal Ghosh ("Ghosh") brought this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., against the New York City Department of Health ("DOH"), claiming employment discrimina-

tion and retaliation. DOH has moved for summary judgment on the grounds that: 1) Ghosh's suit is untimely, 2) there is no triable issue of fact as to Ghosh's substantive claims, and 3) DOH is not a suable entity under New York Law.

### II. BACKGROUND [1]

Ghosh, a United States citizen originally from Bangladesh, has applied for multiple (more than eighty-five by Ghosh's count) positions with the DOH, including Public Health Advisor ("PHA") (for both the School Advisor and Health Care Access programs), Research Assistant, Public Health Epidemiologist and City Research Scientist. Ghosh's resume was consistently marked as "qualified" by DOH's Recruitment Unit, which forwarded his applications to the appropriate hiring programs.[2] Ghosh took, and passed, the civil service test for several of the positions for which he applied. As part of the DOH application process, Ghosh was also required to submit an education equivalency evaluation because he was educated abroad. This evaluation is designed to assess foreign education credentials and determine the equivalent degree in the United States education system. The evaluation submitted to DOH by

1. The factual summary presented herein derives primarily from the following documents: Complaint, *Ghosh v. New York City Department of Health*, No. 03 CV 780, received by the *Pro Se* office Jan. 7, 2003 (the "Complaint"); Memorandum of Law in Support of Defendant's Motion for Summary Judgment, dated July 19, 2005 with accompanying Exhibits and Affidavits; Defendants' Local Rule 56.1 Statement, dated July 19, 2005; Shyamal Ghosh Affirmation, dated October 27, 2005 ("Ghosh Affirm."), with accompanying Exhibits; Plaintiff's Memorandum of Law Opposing Defendant's Summary Judgment Motion, dated October 27, 2005; Defendant's Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment, dated November 28, 2005 ("Reply"). Except

where specifically referenced, no further citation to these sources will be made.

2. According to a letter sent by the DOH Recruitment Unit to Ghosh, DOH's Recruitment Unit receives and processes job applications, determining whether or not the applicant meets the minimum requirement for the job posting, and then refers the application materials to the hiring program for which the position is listed. The hiring managers within the discrete hiring programs then determine which candidates to interview and ultimately hire. (Ltr. to Shyamal C. Ghosh from Gary Washington dated December 18, 2001 ("Recruitment Unit Ltr."), attached as Exhibit B to Alecia Walters Declaration, dated July 19, 2005 ("Walters Decl.")).

Ghosh stated that Ghosh held the academic equivalent of five years professional study in medicine, with a professional qualification comparable to the first professional degree in medicine (doctor of medicine) in the United States. Ghosh was interviewed on more than one occasion by different DOH hiring managers, but he was not interviewed for the majority of the positions for which he applied. He was never hired for any position with DOH. Ghosh claims that he was the victim of discrimination by DOH, based on his race (Southeast Asian), national origin, color (light brown) and religion (Hindu). DOH argues that while Ghosh may have been technically qualified for several DOH job titles, he lacked the personal characteristics and communication skills that DOH was seeking. In its brief, DOH asserts that this same conclusion was reached by multiple hiring managers in several departments.

The positions for which Ghosh applied varied widely in their experiential and educational requirements. For example, the position of City Research Scientist, for which Ghosh applied on numerous occasions, required that applicants possess a doctorate degree with specialization in an appropriate field of science, or a masters degree in an appropriate field combined with three years of full time experience in the appropriate filed of specialization, or other appropriate, equivalent experience. The salary for one of the City Research Scientist positions for which Ghosh applied ranged from $36.85 to $39.49 per hour. The lowest level position for which Ghosh applied, also on numerous occasions, was

that of PHA. This position could be obtained by applicants who possessed a high school degree, provided that they demonstrated four years of appropriate job experience. The salary for one of the PHA positions Ghosh applied for ranged from $14.04 to $15.04 per hour. Ghosh was interviewed for the position of PHA on two occasions, but was not offered a job. These two instances of rejection are discussed at length in the parties' papers, primarily because these are the rejections with regard to which Ghosh sets forth the specific circumstances that are the basis for his conclusion that he was the victim of discrimination. For this reason, a description of the hiring process for these two positions is warranted.

On January 20, 2001, Ghosh attended a DOH job fair and was interviewed for a provisional PHA position with DOH's Bureau of Health Access and School of Health programs.[3] Ghosh was interviewed for the Health Care Access program by Neville Downes ("Downes"), the Hiring Manager for these programs, and Linda Barr–Gale ("Barr–Gale"), Downes's supervisor. Thirteen candidates were interviewed for this position, all of whom were minorities (eight African Americans, four Hispanics, and Ghosh). Three candidates were selected: a Hispanic physician, a Haitian woman who was already employed by DOH, and an African American who Downes believed possessed greater skills than the other candidates. According to his notes following the interview, Downes did not select Ghosh for the position because he felt that Ghosh had other areas of interest and would not stay in the position.

3. Ghosh has not described any particulars of the January 20, 2001 interview for the School of Health PHA position, so it is not discussed in detail here. However, the Court notes that the DOH has submitted the notes of the interviewer who met with Ghosh regarding this position. The notes indicate that this interviewer found Ghosh to have difficulty understanding and responding to questions, and that Ghosh "did not seem to answer questions thoroughly or comprehensively." (*See* Notes of School Health/PHA Position Interviewer, attached as Ex. G to Walters Decl.)

In support of his claim of discrimination, Ghosh points to a question he asserts that Barr–Gale posed to him at the outset of the interview: "Are you from Bangladesh?" DOH submits that this question was intended to be a softball, background question, as Ghosh's resume indicates that he was educated in and had worked in Bangladesh. Ghosh also asserts that he was more qualified than the individuals hired for the provisional position, though he does not submit any evidence in support of this claim.

In March of 2001, a civil service eligibility list for a permanent appointment to the position of PHA was established, thus eliminating the need for provisional appointments to that position. By reason of this action, the candidates selected on January 20, 2001 were never appointed to provisional positions.

Ghosh took, and passed, the civil service test for the PHA position, and on April 27, 2001 he was again interviewed by Downes in this connection. Ghosh was again not selected for the position. Nine applicants from the PHA civil service list established were appointed, including one candidate who was ranked lower on this list than Ghosh. All of the individuals hired for this position were minorities, but none were from Ghosh's protected class of Southeast Asians.

Following Ghosh's rejection from the first provisional PHA position in January, he began to write a series of letters to Mayor Rudolph Giuliani and Commissioner Neil Cohen of DOH, claiming discrimination based on DOH's failure to hire him. Carlos Fortuno ("Fortuno"), who was the DOH Assistant Commissioner of Human Resources, responded to the numerous letters sent by Ghosh. In a number of his replies, Fortuno misspelled Ghosh's name, leaving out the first 'h' in his last name. Ghosh charges that this misspelling constituted religious harassment, as "Ghosh" is a Hindu name of religious significance in that it conveys the bearer's Hindu identity, as "Jesus" conveys a Christian identity and "Islam" conveys a Muslim identity. Fortuno, after complaint by Ghosh, corrected the spelling error in later letters.[4]

Fortuno also attempted to respond to Ghosh's complaints of unfair treatment. With regard to the January 20, 2001 job fair interview, he wrote: "Although it is clear that you met the requirements for Public Health Advisor, our Program folks at the job fair assessed that other candidates faired [sic] better in the interview." (Ltr. from Carlos Fortuno to Shymal C. Gosh [sic] dated February 14, 2001, attached to as Exhibit R to Walters Decl.). In subsequent letters to the Mayor's office, Ghosh complained of Fortuno's inadequate responses, stating that they were incomplete and noting the harassment he was enduring due to the misspelling of his name. (*See* Ltrs. from Ghosh to Mayor Rudolph Giuliani dated April 4, 2001 and May 10, 2001, attached as Exhibit Q to Walters Decl.). Ghosh's correspondence with Fortuno ultimately caused him to conclude that Fortuno was a "central character of discrimination against complainant acting in a planned way using his influence in personal department [sic]...." (Ltr. from Ghosh to Leon C. Dimaya, Regional Director of the SDHR dated July 8, 2002, attached as Ex. 2 to Ghosh Affirm.)

On December 26, 2001, after applying for what at that time Ghosh asserted was more than 25 jobs with DOH, Ghosh filed

---

4. As Ghosh points out, even after the spelling of "Ghosh" was corrected, Fortuno's letters were not error free. In the first letter in which "Ghosh" is spelled correctly, Fortuno continues to misspell Plaintiff's first name ("Shyamal"), addressing him as: "Shaymal Ghosh."

charges of discrimination with both the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("SDHR"). Throughout those agencies' investigations, and throughout this litigation, Ghosh has continued to apply for jobs with DOH, as recently as October of 2005. Ghosh claims that he has now applied for more than 85 positions. To date, Ghosh has not been offered a position by DOH.

## III. LEGAL STANDARD

The Court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court ascertains which facts are material by considering the substantive law of the action, for only those "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even if a dispute of the material facts exists, summary judgment will be granted unless the dispute is "genuine," *i.e.,* "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505.

The initial burden rests with the moving party to demonstrate the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the non-moving party must provide "specific facts showing that there is a genuine issue for trial" in order to survive the motion for summary judgment. Fed.R.Civ.P. 56(e); *see also Matsushita Elec. Indus. Co., Ltd.*

*v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Shannon v. New York City Transit Auth.,* 332 F.3d 95, 98–99 (2d Cir.2003).

In considering a motion for summary judgment, the Court must view the evidence in a light that is favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir.2004). However, the Court must refrain from weighing the evidence and restrict its inquiry to whether there are triable issues of material fact. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

In addition, the Court is mindful that where, as here, a party appears *pro se,* courts are required to broadly construe *pro se* pleadings and interpret them "to raise the strongest arguments that they suggest." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). While the submissions of *pro se* litigants are liberally construed, *see, e.g., Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), that Ghosh is "proceeding *pro se* does not otherwise relieve [him] from the usual requirements of summary judgment." *Fitzpatrick v. New York Cornell Hosp.,* No. 00 Civ. 8594, 2003 WL 102853, at *5 (S.D.N.Y. Jan.9, 2003).

## IV. DISCUSSION

### A. TIMELINESS OF GHOSH'S COMPLAINT

#### 1. *Factual Background: The EEOC and SDHR Complaints*

On December 26, 2001, Ghosh's complaint was filed with the EEOC and the SDHR, after Ghosh had mailed the charging form to both agencies on December 20, 2001. (*See* Charge of Discrimination, filed with EEOC and date-stamped December 26, 2001, attached as Ex. 2 to Ghosh Affirm.; *see also* Certified Mail Re-

ceipts, included in Complaint as Attachment 3.) On December 27, 2001, the EEOC sent Ghosh a form response letter, acknowledging the filing of the charge. (*See* Ltr. from Patrick A. Sanford to Ghosh, dated December 27, 2001, attached as Exhibit 1 to Ghosh Affirm.) In a letter dated January 14, 2001 the EEOC notified Ghosh that it had completed its investigation of his charge and determined that he had provided insufficient evidence to support his allegations. The letter stated: "Your Determination/Notice of Rights to Sue is enclosed, this Determination is final. If you wish to pursue this Charge, you may file a lawsuit on your own in Federal District Court using the Notice of Rights to Sue within 90 days of your receipt of it." (*See* Ltr. from Patrick A. Sanford to Ghosh dated January 14, 2002, attached as Exhibit 1 to Ghosh Affirm.) This letter enclosed the EEOC's "Dismissal and Notice of Rights" form (referred to commonly as the "Right To Sue Letter"), which was dated January 15, 2001. This form stated the EEOC's determination that: "Based on its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (*See* EEOC Dismissal and Notice of Rights form, dated January 15, 2002, attached as Exhibit 1 to Ghosh Affirm.) This form also provided notice of the 90–day filing deadline for filing a suit in federal court, stating that if the lawsuit is not filed within 90 days of receipt of Right To Sue Letter, the "right to sue based on this charge will be lost." (*Id.*)

On January 31, 2002, SDHR sent Ghosh a letter informing him that his complaint had been received and that, because of SDHR's large caseload, considerable time could pass until the agency would be able to begin its investigation. (*See* Ltr. from Leon C. Dimaya to Ghosh, dated January 31, 2002, attached as Exhibit 1 to Ghosh Affirm.) On June 5, 2002 Ghosh received further correspondence from SDHR, forwarding him Defendant's response to his SDHR complaint and providing him with the opportunity to reply, which he did on July 8, 2002. In a determination dated August 19, 2002, SDHR informed Ghosh that it had made a finding of 'no probable cause' in his case and was dismissing his complaint due to insufficient evidence. This letter notified Ghosh that:

As your charge was filed under Title VII of the Civil Rights Act or the Americans with Disabilities Act (ADA) which is enforced by the U.S. Equal Employment Opportunity Commission (EEOC), you have the right to request EEOC review of this action. To secure a review, you must request it in writing, within 15 days of your receipt of this letter, to EEOC district office .. [.] Otherwise, EEOC will generally adopt our action in your case.

(SDHR Determination and Order After Investigation For Federal Charge No. 16GA200019, dated August 19, 2002, attached as Exhibit 1 to Ghosh Affirm.) Following this notice, Ghosh was sent a second Right To Sue Letter by the EEOC, dated October 8, 2002, in which the EEOC indicated (through designation on a form listing several check-box options) that it was closing its file on Ghosh's charge by reason of its adoption of the finding of the state agency. This second notice also included the EEOC's boilerplate Notice of Rights, stating that any federal lawsuit must be filed within 90 days of receipt of this notice. (*See* EEOC Dismissal and Notice of Rights form dated October 8, 2002, attached as Exhibit 1 to Ghosh Affirm.)

As Ghosh did not file his suit in federal court until January 3, 2003, nearly one year after the issuance of the first Right To Sue Letter sent by the EEOC, Defendant argues that the suit is time-barred.

Ghosh points to the second Right To Sue Letter sent to him by the EEOC in October of 2002, and argues that because he filed his suit within 90 days of receipt of that notice, his claims are timely.

### 2. *Title VII Filing Requirements*

Title VII requires that a plaintiff file a complaint of discrimination in a United States district court within 90 days of receiving an EEOC Right To Sue Letter. *See Sherlock v. Montefiore Medic. Ctr.,* 84 F.3d 522, 525 (2d Cir.1996) (*citing* 42 U.S.C. § 2000e–5(f)(1)). Parallel provisions of EEOC regulations state that a complainant may file a civil action in the appropriate United States district court "within 90 days of receipt of the final action on an individual … complaint[.]" 29 C.F.R. § 1614.407(a).

In order for a Title VII complainant to bring an action in federal court, he "must exhaust available administrative remedies in a timely fashion." *Briones v. Runyon,* 101 F.3d 287, 289 (2d Cir.1996). Exhausting administrative remedies entails compliance with applicable EEOC filing regulations. *See Jenkins v. Potter,* 271 F.Supp.2d 557, 562 (S.D.N.Y.2003) (finding a failure to exhaust administrative remedies where an appeal was filed 14 days past the applicable deadline).

### 3. *Application*

There is no dispute that Ghosh received a copy of the initial EEOC Right To Sue Letter, indicating the agency's final decision and informing Ghosh of the 90–day deadline for filing a civil action in federal court. In addition to providing notice of the filing deadline, the letter warned that failure to file a timely lawsuit in federal court may result in dismissal of the claim. It is clear from the record, therefore, that by filing a federal court action more than 11 months after the receipt of the January 15, 2002 Right To Sue Letter, Ghosh did not adhere to the filing deadlines mandated by Title VII requirements and the EEOC regulations.

Although Ghosh did not satisfy the filing requirements in pursuing his Title VII claim, the Court retains discretion to consider whether sufficient grounds exist to equitably toll the filing deadlines. *See Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). The Supreme Court has emphasized that time limits should not be tolled for a failure to perform due diligence and that such equitable measures should be used only "sparingly." *Irwin v. Dep't. of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). In deciding whether to toll the filing time period, courts seek to balance the necessity of adhering to procedural requirements with equitable considerations of dismissing claims on technicalities. This Court is guided by recognized general considerations to be weighed when making this determination, namely, "whether the plaintiff believes [he] has complied with the requirements, whether there is evidence of any affirmative misconduct on the part of the defendant, and whether the plaintiff received sufficient notice." *Harrison v. Potter,* 323 F.Supp.2d 593, 601 (S.D.N.Y. 2004).

In evaluating the instant motion, the Court is persuaded that, on balance, this case presents appropriate circumstances justifying tolling. In opposing DOH's motion for summary judgment, Ghosh acknowledges receiving the January 15, 2002 Right To Sue Letter from the EEOC, but argues that the subsequent letter sent to him on January 31, 2002 by the SDHR notified him that the SDHR was going to "investigate the case which prevent[ed] plaintiff (me) to sue at that time." (Plaintiff's Mem. of Law Opposing Defendant

[sic] Summary Judgment Motion, dated October 27, 2005, at 5.) In the affirmation Ghosh submits in support of his opposition, he similarly states that he "filed a complaint with [the] SDHR with a copy to [the] EEOC. EEOC adopted [the] SDHR determination and noticed me [sic] by October 8, 2002 letter. EEOC did send another notice in the middle of investigation by [the] SDHR which was withdrawn by this notice." (Ghosh Affirm. at 2.) While the initial January 31, 2002 letter sent by the SDHR makes no reference to Ghosh's right to sue in federal court, Ghosh's submissions suggest that he was, understandably, confused by the dual processing of his case by both agencies, and believed that he would have to wait for the SDHR's administrative process to conclude prior to filing his suit.[5] Were Ghosh represented by counsel, such reasoning perhaps would not be tenable. However, as a *pro se* plaintiff attempting to navigate a confusing administrative structure, made more confusing by SDHR's duplicative investigation begun just two weeks after Ghosh was sent the EEOC's final determination in the case, Ghosh is not unjustified in reaching the conclusion that he was obligated to wait to file suit until the close of the administrative proceedings. *Cf. Shumway v. Hendricks,* No. 93–CV–485, 1994 WL 672656, at *3 (N.D.N.Y. Nov. 28, 1994) (recognizing the principle that "an administrative agency error should not work to a claimant's detriment").

The case file indicates that Ghosh has been diligent in pursuing his claims. The Court is satisfied that at the time he filed the instant action Ghosh believed he had complied with the necessary administrative steps and that his failure to file in a timely manner was not due to a lack of diligence.[6] This case is distinguishable from *Lo v. Pan Am. World Airways, Inc.,* 787 F.2d 827, 828 (2d. Cir.1986), in which the Second Circuit affirmed summary judgment against a plaintiff when she obtained a second "right-to-sue" letter after her time to file pursuant to the first right-to-sue letter expired. In *Lo,* the Second Circuit indicated that the plaintiff had purposefully filed a second EEOC charge in order to circumvent the filing deadlines, and subsequently received a second right to sue letter. In the instant case there is no evidence that Ghosh sought to manipulate the administrative process. Accordingly, the Court finds that equitable tolling is appropriate in the instant case and that Ghosh is permitted to sue with regard to those claims which are encompassed by his EEOC charge. *See Reyes v. North Shore–Long Island Jewish Health Sys.,* No. 00–CV–6400, 2002 WL 31180961 (E.D.N.Y. Oct.2, 2002) (distinguishing *Lo* and allowing *pro se* plaintiff, who had sued in federal court within 90 days of her second right to sue letter, to proceed with claim).

### 4. Time–Barred Claims

▇ The application of equitable tolling in this case does not, however, revive those

---

**5.** That the EEOC and the SDHR are parties to a work sharing agreement, which is intended to prevent the duplication of work by the agencies, suggests that Ghosh's confusion was not unwarranted. It is unclear why both agencies undertook the investigation of Ghosh's claims in light of such an agreement. *See* E.E.O.C., Filing a Claim of Employment Discrimination, *http://www.eeoc.gov/charge/overview_charge_filing.html* (last visited Feb. 3, 2006) (describing the administrative process and the existence of work sharing agreements, through which the EEOC and local agencies can "avoid duplication of effort").

**6.** This conclusion is further bolstered by Ghosh's many statements of frustration with the pacing of his case and his complaints that his pursuit of his claims was delayed by "time wasting" by various parties involved in the case.

claims that were not filed in a timely manner with the EEOC. In order to be timely filed, charges of discrimination must be filed with the EEOC within 300 days of the alleged discrimination. *See Pikulin v. City Univ. of New York,* 176 F.3d 598, 599 (2d Cir.1999) ("An employment discrimination claim must be filed with the EEOC within 300 days of the alleged discrimination in a state, like New York, with a fair employment agency."). Because Ghosh filed his initial charge with the SDHR and the EEOC on December 26, 2001, any claims for actions occurring before March 1, 2001, 300 days prior to December 26, 2001, are time-barred.

Ghosh's EEOC charge lists several instances of DOH's refusal to hire him that occurred prior to March 1, 2001. Specifically, Ghosh complains that he was not hired for the provisional PHA position for which he interviewed at the January 20, 2001 DOH job fair. According to Ghosh's submissions, he was informed that he was not hired for this position on January 22, 2001. (*See* Chart of Plaintiff's Application of Job Listing [sic] with DOH, attached as Exhibit 5 ("Exhibit 5"), at 2.) In addition, in his EEOC charge, Ghosh also notes that he was treated differently when he was not hired for a Research Assistant position for which he interviewed in December of 2000. Because Ghosh's charge states that he was rejected for this position on January 31, 2001, this action also predated March 1, 2001 and is time-barred. Indeed, Ghosh has made claims with regard to a number of occurrences predating March 1, 2001, all of which are time-barred. (*Id.,* (listing earlier rejections)).

Ghosh argues that all of the alleged discriminatory instances in which he was not hired are indeed timely as they fall within the "continuing violation" exception to the 300 day filing period. "The continuing violation exception extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998) (citations and emphasis omitted). "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). The scope of this exception is relatively narrow, and "[m]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Quinn,* 159 F.3d at 765 (*quoting Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir. 1993) (internal quotation marks omitted)). In the instant case, Ghosh alleges discrimination based on many discrete incidents in which he was not hired for positions for which he applied. Those decisions not to hire Ghosh, however, are unrelated, episodic events and there is no sufficient evidence in the record to support a finding that would satisfy the continuing violation doctrine. Moreover, DOH has argued, and Ghosh has not refuted, that the alleged violations cannot be the result of a policy of discrimination as the hiring process at DOH was decentralized, and that the choice not to hire Ghosh for each of the jobs for which he was considered rested with different hiring managers within various discrete hiring programs.[7] (*See*

7. Ghosh's conclusory assertions that Fortuno orchestrated a campaign of discrimination against him and conspired with the hiring programs of DOH are unsupported by the

Recruitment Unit Ltr.) In light of these considerations, the Court concludes that each of these instances of alleged discrimination is separate and that the 300–day time limit applies to each instance distinctly. Thus, all alleged rejections of Ghosh's job applications occurring prior to March 1, 2001 are time-barred.

### B. CLAIMS FOR EMPLOYMENT DISCRIMINATION

#### 1. Standard for Title VII Failure to Hire Claim

■ In order to establish a prima facie case for a claim of failure to hire arising under Title VII, a plaintiff must show: (1) membership in a protected class, (2) qualification for the position sought, (3) an adverse employment action, and (4) circumstances giving rise to an inference of discrimination. *See Pasha v. William M. Mercer Consulting, Inc.,* No. 00 Civ. 8362, 2004 WL 188077, at *3 (S.D.N.Y. Feb.2, 2004). In failure to hire cases, a plaintiff may demonstrate "circumstances giving rise to an inference of discrimination" by showing that the defendant continued to solicit applications for the position applied to and hired someone outside of the plaintiff's protected class. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Tanvir v. New York State Banking Dep't.,* No. 01 Civ. 0144, 2003

WL 22019733, at *5 (S.D.N.Y. Aug.12, 2003). In cases in which a plaintiff successfully presents a prima facie case, the familiar burden-shifting framework of *McDonnell Douglas* requires the defendant to rebut the plaintiff's prima facie case by articulating a valid, non-discriminatory reason for the employment action in question. Once the defendant articulates a legitimate reason for the failure to hire, the presumption of discrimination created by the prima facie case disappears and the burden returns to the plaintiff to show that the proffered legitimate reason "[was] not [the defendant's] true reason, but [was] a pretext for discrimination." *Woodman v. WWOR–TV, Inc.,* 411 F.3d 69, 76 (2d Cir.2005); *see also Pasha,* 2004 WL 188077, at *3.

#### 2. Eligible Claims

■ Ghosh claims that he has suffered discrimination on a multitude of occasions in which DOH failed to hire him for positions for which he was qualified. In support of his assertion that, as of the date of his filing of his brief in the instant motion, he has been rejected from more than 85 positions by the DOH, Ghosh has submitted a chart, which he drafted, listing the positions he has applied for, along with information about the application and hiring process and the date, if any, on which he was informed that he had not been hired for the position.[8] (*See* Exhibit 5.)

---

factual record and thus cannot substantiate a claim that the DOH's actions were the result of a discriminatory policy or mechanism. Moreover, the Court finds that Ghosh has produced no evidence that Fortuno acted with discriminatory intent towards Ghosh. The misspelling of Ghosh's last name, while unfortunate, does not constitute an adverse action for Title VII purposes. In addition, there is no evidence to support Ghosh's claim that Fortuno misspelled his name intentionally, as Fortuno's interrogatory response on this issue, submitted to the Court as Exhibit 7 to

Ghosh's affirmation, states: "To the best of my recollection, the misspelling of plaintiff's name was not made because of discrimination based on his religion, these mistakes were either innocent misspelling or typographical errors." (*See* Interrogatory of Carlos Fortuno, attached as Exhibit 7 to Ghosh Affirm.) Nothing in the record supports a reasonable inference by a rational factfinder that this explanation for Fortuno's spelling errors reflected discriminatory intent.

**8.** As is discussed above, Ghosh did not file his charge with the EEOC until December 26,

DOH argues that because many of these claims are not set forth in Ghosh's EEOC charge, they should not be considered by the Court, as they are not "reasonably related" to the claims named in that charge. *See Butts v. New York City Dep't of Hous. Preservation and Dev.*, 990 F.2d 1397, 1402–03 (2d Cir.1993) (describing scope of reasonably related claims). In his EEOC charge Ghosh specifically cited the DOH's failure to hire him for a PHA position following interviews in both January and April of 2001, as well as rejections for the following positions: Research Scientist, Public Health Epidemiologist, Public Health Educator, Public Health Inspector, Community Associate, and Public Health Assistant. He also labeled his EEOC claim as a continuing violation in the EEOC charge and further stated that he was rejected from more than 25 other positions for which he applied. DOH argues that each failure to hire is a discrete event and cannot be considered "reasonably related" to other failures to hire. As is discussed in greater detail below, because the Court concludes that Ghosh has failed to state a prima facie case with regard to all but two of the occasions on which he was not hired by DOH, including with regard to both those claims specifically listed in his EEOC charge and the claims that are not specifically listed, it need not decide the question of whether the unspecified claims are reasonably related to the stated claims.

The Court notes that DOH, for purposes of this motion, concedes that Ghosh has established the first and third prongs of his prima facie case, specifically that he is a member of a protected group and that he suffered an adverse employment action. DOH argues, however, that Ghosh cannot

demonstrate the second prong—that he is qualified for the positions in question—as he exhibited poor written and oral communication skills, as well as an inability to get along with others, all of which were requirements for the positions in question. In addition, DOH contends that Ghosh has not made out a prima facie case because he has not submitted evidence sufficient to raise an inference of discrimination with regard to DOH's refusal to hire him, and thus fails to establish the fourth prong of his prima facie case.

The Court rejects DOH's argument that Ghosh can not make out a prima facie case on the ground that his lack of communications skills rendered him unqualified for the positions. *See Tanvir*, 2003 WL 22019733, at *6 ("While poor communication skills may be a legitimate reason to reject an applicant, this factor does not preclude [the plaintiff] from establishing a prima facie case.") It is true that several of the positions Ghosh applied for, including those of City Research Scientist and Public Health Epidemiologist, do indeed list strong communication skills as a "preferred skill" in the job posting notices created by DOH, while others, including the posting for PHA (at Level I), do not. However, a "preferred skill" is not equivalent to a prerequisite. Further, as DOH has acknowledged, Ghosh's resume was referred by the recruitment unit to various hiring programs for consideration after the Recruitment Unit had made the initial determination that Ghosh was "qualified" for the positions in question. (*See* Recruitment Unit Ltr.)

The Court is also mindful that the plaintiff's burden of setting forth a prima facie case has been described as "de minimus." *Chambers v. TRM Copy Ctrs. Corp.*, 43

2001; thus all of his claims based on rejections occurring prior to March 1, 2001, of

which there are many, are time-barred.

F.3d 29, 37 (2d Cir.1994) (internal citation omitted); *see also Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 134 (2d Cir. 2000) ("The burden of establishing a prima facie case is not a heavy one. One might characterize it as minimal.") Indeed, because Ghosh was found to be a qualified candidate for the positions in question by DOH's Recruitment Unit, the Court finds that Ghosh has demonstrated his qualifications for all of the positions for which his resume was referred by DOH's Recruitment Unit to the appropriate hiring manager. Thus, with regard to Ghosh's ability to establish a prima facie case, at issue is only the fourth prong of the inquiry: whether Ghosh has provided evidence of circumstances that raise an inference of discrimination with regard to each position for which he alleges he applied and was rejected.

Because the Court determined above that Ghosh has failed to establish a prima facie case for the claims relating to all but two of the positions for which he applied, it will first discuss the latter two instances. It will then turn to the remaining claims of discrimination and address Ghosh's failure to establish a prima facie case.

(a) *April 27, 2001 Public Health Advisor Position*

■ On April 27, 2001, Ghosh was interviewed for a PHA position, after his number on the civil service list was reached for an interview. Of those interviewed, nine applicants were selected for permanent positions. All of the selected candidates were chosen from the civil service list, with eight of them ranking higher than Ghosh and one ranking lower. All of the candidates selected for the positions were minorities, but none were from Ghosh's protected class.

With regard to his prima facie case, Ghosh has demonstrated that he is a member of a protected class, that he was qualified for the PHA position, and that he suffered an adverse employment action. Thus, the only prong of his prima facie case in question is whether Ghosh has demonstrated circumstances giving rise to an inference of discrimination.

To support his claim, Ghosh points out that DOH hired someone who was ranked lower than him on the civil service list, and that DOH did not hire any Southeast Asians for the position. The Court finds these circumstances sufficient to meet Ghosh's minimum burden of raising an inference of discrimination. *See Tanvir,* 2003 WL 22019733, at *5. DOH argues that Downes, the Hiring Manager who interviewed Ghosh on April 27, 2001, declined to hire Ghosh because he believed that Ghosh did not demonstrate sufficient communication skills or interest in the position and was unresponsive to questions posed to him. Poor communication skills have been recognized as a legitimate rationale for a decision not to hire a candidate. *See id.* at *21–23 ("Although good communication skills were not a formal prerequisite for the position, such a trait certainly could be used.... Employers use interviews to evaluate candidates beyond the information presented by their applications and resumes, and to assess applicants' abilities to work within the projected employment environment.") Thus, DOH's explanation is appropriate, and had DOH submitted evidence to support its assertion, the burden would again shift to Ghosh to demonstrate that this proffered reason is pretextual. As it stands however, DOH has failed to submit admissible evidence to support its proffered legitimate reason for Downes's decision.[9]

**9.** With regard to this instance of failure to

hire, Ghosh argues that additional circum-

The law requires that a defendant in an employment discrimination case "rebut the presumption of discrimination [created by plaintiff's prima facie case] by producing evidence that the plaintiff was rejected . . . for a legitimate, nondiscriminatory reason." *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. Moreover, this evidence must be in admissible form. *See Mandell v. County of Suffolk & John Gallagher,* 316 F.3d 368, 380 (2d Cir.2003) ("To rebut [the] presumption [created by the prima facie case], the employer must come forward with admissible evidence of legitimate nondiscriminatory reasons for its adverse actions toward plaintiff."); *Byrnie v. Town of Cromwell Bd. of Educ.,* 243 F.3d 93, 102 (2d Cir.2001) (noting that the employer must offer, "via admissible evidence," legitimate justification for its action and that "[a]t summary judgment in an employment discrimination case, a court should examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer.") Here, in support of its contention that Downes rejected Ghosh by reason of Ghosh's lacking communication skills, DOH has submitted Downes's notes following his January 20, 2001 interview of Ghosh, and DOH's June 5, 2002 letter submission describing the case to the SDHR during that agency's investigation. Downes's impressions of Ghosh following the January 20, 2001 job fair interview are documented in DOH's "Sub–Managerial Recruitment Form," which contains information showing the diversity of the applicants interviewed at the job fair, the candidates who were offered the position and

the reasons that they were selected, as well as a brief description of all minority candidates and the reason they were not selected. The notation next to Ghosh's name states: "Candidate has other interests and would not stay in this position." (*See* Sub–Managerial Recruitment Form, attached as Exhibit E to Walters Decl.) The DOH letter to the SDHR further describes Downes's conclusions following his January 20, 2001 interview with Ghosh. The letter states that Downes felt that Ghosh displayed a low level of interest in the position, was unresponsive to questions and also answered questions in a manner that caused Downes to believe that Ghosh would have difficulty taking direction from supervisors. The letter goes on to state that Downes reached the same conclusion following his second interview of Ghosh, on April 27, 2001, and that Ghosh was not selected for the position of PHA for the same reasons that he had been rejected following the January 20, 2001 job fair.

The difficulty with DOH's proffered legitimate reason is that it is not supported by any admissible evidence suggesting that Downes reached the same conclusion about Ghosh following the second interview and that Ghosh's application was denied on that basis. In its brief, DOH points to Exhibit O in support of the contention that Downes found Ghosh's interview performance lacking for the same reasons he identified following the January interview. The Submanagerial Recruitment Form from the January 20, 2001 interview, described above, is annexed to the attorney's declaration as Exhibit E. The attorney declaration states that "a copy of the form

stances support an inference of discrimination, primarily that most of the individuals hired for this position were black females, none of the candidates hired possessed advanced degrees, and several had not completed an undergraduate degree. As Ghosh

points out, none of the candidates who were hired possessed educational credentials comparable to Ghosh's. (*See* Application Materials and Resumes of Hired Candidates, attached as Exhibit P to Walters Decl.)

showing all the minority applicants who were not chosen for the position of Public Health Advisor on April 27, 2001 is annexed as 'Exhibit O'." (*See* Exhibit O, attached to Walters Decl.) However, Exhibit O attaches one page from the identical form that was already identified as Exhibit E, the sub-managerial recruitment form filled out following the January job fair. Thus, DOH has not submitted any admissible documentary evidence reflecting Downes's assessment following the *April* interview, and has relied on evidence relating to the January interview only. The representation in the letter to the SDHR that Downes declined to hire Ghosh following the April interview for the same reasons he recorded following the January interview is inadmissable hearsay. Without appropriate documentary evidence, such as a deposition or an affidavit from Downes attesting to his legitimate reasons for rejecting Ghosh following the April interview, the Court cannot conclude that DOH has met its burden of rebutting Ghosh's prima facie case with regard to this particular claim.

(b) *Public Health Epidemiologist Position*

■ There is only one additional timely claim of failure to hire for which Ghosh has carried his burden of establishing a prima facie case. The evidence in the record demonstrates that Ghosh applied for a position as Public Health Epidemiologist with DOH's Communicable Diseases program on May 22 and May 30 of 2001. (*See* Exhibit B.) Because DOH's records confirm that Ghosh's resume was "qualified" and referred to the relevant hiring program for this position, the Court assumes that Ghosh met the minimum requirements for the position. Further, the record demonstrates that while Ghosh was not interviewed for the position, four individuals outside of his protected class were

considered. (*See* NYC Dep't of Health Recruitment Form, attached as Exhibit J to Walters Decl.) A Hispanic woman, originally from the Dominican Republic, Dr. Carmen Roman ("Roman"), was ultimately selected for the position. *Id.* This evidence is sufficient to raise an inference of discrimination and thus establish Ghosh's prima facie case, under the applicable minimal standard.

However, Ghosh has not submitted any evidence demonstrating that DOH's proffered reason for declining to select him, that another candidate was better qualified for the position, was pretextual. DOH has submitted evidence that Roman was at the time of her hiring for the Epidemiologist position a Senior Public Health Advisor for DOH, and that she was recommended for the position by an Assistant Commissioner of the Communicable Disease Program. (*See* Ltr. from Marcelle Layton, M.D. to Maureen Sealy, Director of Hiring and Recruiting, dated May 22, 2001, attached as Exhibit K to Walters Decl.) That Roman was already working for DOH, and well regarded within the institution, is a legitimate reason for preferring her to Ghosh. Ghosh has offered no evidence to suggest that this explanation is pretextual or that improper motives underlay the hiring of Roman. For this reason, summary judgment is properly granted with regard to this claim.

(c) *Other Positions*

With regard to all of the other positions for which he has applied, Ghosh has failed to submit sufficient evidence to make out a prima facie case of discrimination. Assuming that Ghosh applied, was qualified for, and was rejected for each position he lists in his chart of DOH jobs, Ghosh has not provided any evidence raising an inference of discrimination on the part of the hiring managers to whom his resume was

forwarded. In particular, he has offered no evidence about who, if anyone, was hired for the positions in question or whether or not DOH continued to solicit the applications of similar candidates after Ghosh was rejected.[10] While Ghosh repeatedly asserts in his papers that he was not hired by reason of a campaign of discrimination by DOH, he offers only conclusory claims of discrimination, and of his own qualifications for the jobs in question, to support his argument. This allegation is insufficient to withstand a motion for summary judgement. *See Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any con-

crete particulars, would necessitate a trial in all Title VII cases.").

While Ghosh has pointed out numerous gaps and/or errors in the information provided by DOH, these failings in DOH's submissions do nothing to advance Ghosh's claim that DOH's failure to hire him was a result of improper motives.[11] As discussed above, though the burden of establishing a prima facie case of discrimination is "not onerous," it is nonetheless the *plaintiff's* burden, and it cannot be met with conclusory assertions. *See Burdine,* 450 U.S. at 253, 101 S.Ct. 1089 ("The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to

---

**10.** For example, one instance in which Ghosh was not hired as a City Research Scientist is discussed in DOH's opening brief. While Ghosh's chart, which lists this position as one he applied for in August and November of 2001 (among other instances), indicates that DOH hired someone else, Ghosh admitted in his deposition that he did not know whether anyone else had been hired, or, if someone was hired, what the candidate's race or religion or qualifications were. (*See* Pl. Dep. at 155–56.) In these circumstances, Ghosh has not put forward any evidence of discriminatory intent. The Court notes that DOH asserts that no one was hired for this position due to a hiring freeze. DOH has failed to provide admissible evidence to the Court demonstrating that such a freeze was in effect. However, as already set forth, because Ghosh has failed to make out a prima facie case, the claim is dismissed.

**11.** Ghosh has properly identified numerous factual errors in DOH's submissions, in addition to the submission by DOH already discussed above, of an identical document as both Exhibit E and Exhibit O, which were identified as two different documents. For example, Ghosh points out that DOH's assertion in its Rule 56.1 statement that "[t]he 3 candidates who were interviewed for the PHE [Public Health Epidemiologist] position included one Caucasian male, two Hispanic females, and one African American male" is

contradictory. DOH's Exhibit P is also flawed in that it represents that it includes the resumes of the nine individuals who were hired over Ghosh for the PHA position he was interviewed for in April of 2001. However, the exhibit includes resumes for only seven of the nine hired candidates. (*See* Exhibit P.)

Ghosh's biggest complaint regarding DOH's motion, however, is that while the motion discusses several instances in which Ghosh was not selected for employment, it fails to explain all of the 85 plus occasions on which Ghosh claims to have applied and been rejected. For example, Ghosh asserts that he applied for the position of Research Scientist more than 25 times with DOH, but that DOH's motion attempted to explain only one instance in which he was not hired. Ghosh claims that a question of fact therefore exists with regard to these positions. However, Ghosh's vague claims (many of which are time-barred), set forth in his Complaint and on his EEOC and SDHR charge, do not make out a prima facie case of discrimination. Therefore, DOH is not called upon to rebut each and every instance of failure to hire. Ghosh does not describe any specifics or circumstances with regard to these instances that would raise an inference of discrimination. With regard to the select few timely claims for which Ghosh has adequately described the circumstances that led him to believe he was the victim of discrimination, DOH has responded to his allegations.

an inference of unlawful discrimination."); *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir.2000) (describing plaintiff's "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff"); *see also Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (noting that "even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment").

Accordingly, with the exception of Ghosh's claim relating to the April of 2001 failure to hire him for the position of PHA, the Court grants DOH's motion for summary judgement.[12]

### 3. *DOH's Legal Status*

The Court will briefly address DOH's argument that the case should be dismissed because Ghosh names only the New York City Department of Health as a defendant in this action. Because under the New York City Charter "all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law[,]" N.Y. City Charter Ch. 17, § 396, DOH is not a suable entity. Thus, individual claims against DOH are subject to dismissal on this basis. *See McAllister v. New York City Police Dep't*, No. 97 Civ. 7420, 1998 WL 314732, at *1–2 (S.D.N.Y. June 15, 1998) (collecting cases). However, in the

context of this longstanding litigation this objection raises a mere technicality that DOH could have raised much earlier and could readily have been corrected by an amendment of the Complaint. Because Ghosh is a *pro se* litigant, the Court will deem the Complaint caption amended to reflect the City of New York (and not the City Department of Health) as the proper defendant. *See Pennyfeather v. City of New York*, No. 99 Civ. 2580, 2000 WL 1161081 (S.D.N.Y. Aug.16, 2000) (recommending dismissal of the complaint against Department of Health for substantive reasons but also that the court amend the case caption to reflect the City of New York as the proper suable entity); *but see Campbell v. Dep't of Corr. of New York City*, No. 95 Civ. 3242, 1996 WL 79869 (S.D.N.Y. Feb.26, 1996) (dismissing all claims of *pro se* plaintiff because the Department of Correction is not a suable entity).

### V. ORDER

For the reasons set forth above, it is hereby

**ORDERED** that the motion of Defendant, the New York City Department of Health, for summary judgement pursuant to Federal Rule of Civil Procedure 56(c) is DENIED as to the claim of plaintiff, Shyamal Ghosh, arising out of his application for the position of Public Health Assistant following the April 27, 2001 interview, and is GRANTED as to all other claims; and it is further

---

**12.** The Court notes that Ghosh's Complaint also asserts a Title VII claim based on retaliation. (*See* Complaint ¶ 4.) While Ghosh did not make any claim for retaliation in his EEOC filing, claims of retaliation are "reasonably related" to those named in an EEOC charge and the Court has jurisdiction over such claims. *See Butts,* 990 F.2d at 1402 (noting that with regard to claims of retaliation, "we have relaxed the exhaustion re-

quirement based on the close connection of the retaliatory act to both the initial discriminatory conduct and the filing of the charge itself"). Because DOH has not addressed Ghosh's claim of retaliation in its motion papers, the Court concludes that the instant motion does not pertain to Ghosh's retaliation claim. Thus the Court finds that Ghosh's retaliation claim stands.

**ORDERED** that the Clerk of Court is directed to amend the case caption herein to name the City of New York, and not the New York City Department of Health, as the defendant; and it is finally

**ORDERED** that the parties appear at a conference with the Court on February 23, 2006 at 2:15 p.m. to discuss final pretrial preparations and scheduling.

**SO ORDERED.**